**Douglas B. FIRESTONE,
et al., Plaintiffs,**

v.

**Daniel M. GALBREATH,
et al., Defendants.**

No. C2–89–840.

United States District Court,
S.D. Ohio,
Eastern Division.

Aug. 9, 1995.

Joan E. O'Dell, Washington, DC, Russell A. Firestone, Washington, DC, Jeffrey N. Kramer, Mansfield, Ohio, for plaintiff, Russell A. Firestone, III.

Robert Myron Kincaid, Jr., Baker & Hostetler, Columbus, OH, for Galbreath defendants.

## OPINION AND ORDER

GRAHAM, District Judge.

This is an action filed by Douglas B. Firestone and Amy del Valle, the Firestone grandchildren of Dorothy Firestone Galbreath, against Daniel Galbreath, individually, and doing business as Darby Dan Farms, as executor of the estates of Dorothy Galbreath and John W. Galbreath, and as trustee of the Dorothy Bryan Galbreath Family Trust ("the Family Trust"), the John W. Galbreath Trust, and John W. Galbreath's Darby Dan Farm Trust, Joan Galbreath Phillips, individually and doing business as Darby Dan Farms, James W. Phillips, Lizanne Galbreath, John W. Galbreath & Company, Inc., Galbreath–Ruffin Corp., Akron Redevelopment Corp., and Dolorees I. Dutoit (hereinafter the "Galbreath defendants"), the law firm of Bricker and Eckler, John Eckler, David C. Cummins, Charles H. Waterman, III, and John W. Phillips (hereinafter the "Bricker defendants") and the accounting firm of Bolon, Hart & Buehler, Inc. Rebecca Cummins, executrix of the estate of David Cummins, was substituted as a party for Mr. Cummins by an order filed on May 8, 1990. The other eight Firestone grandchildren were named as defendants in the original complaint but were later realigned as plain-

tiffs. Russell A. Firestone, III ("the plaintiff" or "Russell A. Firestone, III") is the only remaining plaintiff, and the Galbreath defendants and the Bricker defendants are the remaining defendants.

This action was originally filed in the United States District Court for the Southern District of New York, which granted a motion for change of venue to this court. Various tort claims, including claims of tortious interference with an expectancy, were asserted against the defendants alleging that the defendants had wrongfully secured the transfer of assets belonging to Dorothy Galbreath while she was allegedly mentally incompetent, and that these assets would otherwise have constituted a part of Dorothy Galbreath's residual estate, which was bequeathed to the Family Trust and thus indirectly to the plaintiffs, who were beneficiaries of the Family Trust. In an opinion filed on July 3, 1990, this court granted defendants' motions to dismiss all of the plaintiffs' claims. *Firestone v. Galbreath,* 747 F.Supp. 1556 (S.D.Ohio 1990). On September 23, 1992, the Sixth Circuit affirmed the dismissal of all claims with the exception of the claims for tortious interference with an expectancy. The Sixth Circuit certified to the Ohio Supreme Court the issues of whether Ohio courts would recognize this tort and, if so, who could bring such an action. *Firestone v. Galbreath,* 976 F.2d 279 (6th Cir.1992). In an opinion rendered on August 11, 1993, the Ohio Supreme Court ruled that Ohio would recognize this tort and that anyone who could prove the elements of the tort could bring such an action. *Firestone v. Galbreath,* 67 Ohio St.3d 87, 616 N.E.2d 202 (1993). On May 31, 1994, the Sixth Circuit remanded the claims of tortious interference with an expectancy to this court for further proceedings. *Firestone v. Galbreath,* 25 F.3d 323 (6th Cir. 1994). On October 11, 1994, plaintiff filed a first amended complaint with this court, asserting various claims of tortious interference with an expectancy.

This matter is now before the court on the motions of the Galbreath and Bricker defendants for summary judgment.

Under Fed.R.Civ.P. 56(c), summary judgment is proper "if the pleadings, deposi-

tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 378 (6th Cir.1993); *Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs.,* 979 F.2d 1131, 1133 (6th Cir.1992) (per curiam). The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, *LaPointe,* 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1389 (6th Cir.1993). In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.,* 8 F.3d 335, 339–40 (6th Cir.1993). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). *See generally Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir.1989). The trial court "no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson,* 477 U.S. at 251–53, 106 S.Ct. at 2512). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *see Gregory v. Hunt,* 24 F.3d 781, 784 (6th Cir.1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Adams v. Metiva,* 31 F.3d 375, 378 (6th Cir.1994).

Both the Galbreath and Bricker defendants assert that plaintiff's claims of tortious interference with an expectancy are barred by the doctrines of *res judicata* and collateral estoppel. Defendants contend that this action is barred by decisions of the Franklin County, Ohio Tenth District Court of Appeals rendered on October 6, 1992 and December 3, 1992 and by decisions of the Franklin County, Ohio Probate Court rendered on March 14, 1995 and May 10, 1995.

█ Federal courts must apply state rules of preclusion in determining the effect of state court judgments. *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190 (6th Cir. 1986). Ohio courts recognize the doctrines of *res judicata* or claim preclusion and collateral estoppel or issue preclusion.

Under the doctrine of *res judicata,* an existing final judgment rendered on the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. *Norwood v. McDonald,* 142 Ohio St. 299, 27 O.O. 240, 52 N.E.2d 67 (1943). A final judgment is a complete bar to any subsequent action upon the same cause of action between the parties or those in privity with them. *Whitehead v. General Tel. Co.,* 20 Ohio St.2d 108, 49 O.O.2d 435, 254 N.E.2d 10 (1969).

The application of *res judicata* requires: 1) a prior adjudication upon the merits by a court of competent jurisdiction; 2) an identity or mutuality of the parties between the former and latter cases; and 3) that the cause of action, claims or issues between the two cases are identical. *Goodson v. McDonough Power Equip., Inc.,* 2 Ohio St.3d 193, 2 OBR 732, 443 N.E.2d 978 (1983); *Whitehead,* syllabus paragraph two.

The term "parties" includes those who are directly interested in the subject matter of the suit, and who have a right to make a defense, control the proceedings, adduce evidence and appeal the proceedings. *Wright v. Schick,* 134 Ohio St. 193, 12 O.O. 6, 16 N.E.2d 321 (1938); *Quinn v. State, ex rel. Leroy,* 118 Ohio St. 48, 160 N.E. 453 (1928). A person, even though not a party to the judgment, may nevertheless be connected with it by his interest in the result of that litigation and by his active participation therein, so as to be bound by the judgment. *Quinn,* 118 Ohio St. at 53, 160 N.E. at 455. In determining whether there is an identity of parties, a court must look behind the nominal parties to the substance of the cause to determine the real parties in interest. *Trautwein v. Sorgenfrei,* 58 Ohio St.2d 493, 12 O.O.3d 403, 391 N.E.2d 326 (1979). The character of a party is determined not by his position on the docket or in the caption of the case, but by reference to his relation to the other parties, as shown by his interests involved in the case. *Wright,* 134 Ohio St. at 197, 12 O.O. at 8, 16 N.E.2d at 324. Therefore, *res judicata* may arise between codefendants if they represented adverse interests in a former proceeding as to an issue and such issue was in fact litigated. *Id.; Fidelity & Casualty Co. v. Federal Express, Inc.,* 136 F.2d 35 (6th Cir.1943) (applying Ohio law).

Two causes of action are considered the same if the same facts or evidence would sustain both. *Norwood,* 142 Ohio St. at 306, 27 O.O. at 243, 52 N.E.2d at 71. A prior adjudication serves to settle all issues between the parties that could have been properly litigated in the case as well as those issues which were actually raised and decided. *Rogers v. Whitehall,* 25 Ohio St.3d 67, 25 OBR 89, 494 N.E.2d 1387 (1986); *Quinn,* syllabus paragraph one; *DiPaolo v. DeVic-*

*tor,* 51 Ohio App.3d 166, 555 N.E.2d 969 (1988).

The doctrine of *res judicata* bars relitigation of final judgments rendered by a court of competent jurisdiction even if the judgment is erroneous, and extrinsic evidence is not admissible to show error. *LaBarbera v. Batsch,* 10 Ohio St.2d 106, 39 O.O.2d 103, 227 N.E.2d 55 (1967); *Panzarello v. Panzarello,* 61 Ohio App.3d 364, 572 N.E.2d 803 (1989). A change in decisional law which might arguably reverse the outcome in a prior civil action does not bar the application of the doctrine of *res judicata. National Amusements, Inc. v. Springdale,* 53 Ohio St.3d 60, 558 N.E.2d 1178 (1990). However, there is no *res judicata* bar where the prior court did not have subject matter jurisdiction. *LaBarbera,* 10 Ohio St.2d at 109, 39 O.O.2d at 105–106, 227 N.E.2d at 59.

Under Ohio law, a dismissal for want of prosecution under Ohio Civ.R. 41(B)(1) is a final adjudication on the merits for purposes of applying the principles of *res judicata. Crittendon v. Crittendon,* 82 Ohio App.3d 484, 612 N.E.2d 759 (1992); *Austin v. Miami Valley Hospital,* 19 Ohio App.3d 231, 19 OBR 382, 483 N.E.2d 1185 (1984); Ohio Civ.R. 41(B)(3).

Ohio also applies the collateral estoppel branch of the *res judicata* doctrine. If an issue of fact or law is actually litigated and determined by a valid and final judgment, such determination being essential to that judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. *Hicks v. De La Cruz,* 52 Ohio St.2d 71, 6 O.O.3d 274, 369 N.E.2d 776 (1977).

In order to establish the defense of collateral estoppel, the party must prove that: 1) the party against whom estoppel is sought was a party or in privity with a party in the prior action; 2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; 3) the issue must have been tried and decided and must be necessary to the final judgment; and 4) the issue must be identical to the issue involved in the prior suit. *Monahan v. Eagle Picher Industries, Inc.,* 21 Ohio App.3d 179, 21 OBR 191, 486 N.E.2d 1165 (1984). The

issues are identical where they rest upon the same facts and are supported by the same proof. *Id.* at 181, 21 OBR at 193–194, 486 N.E.2d at 1168. The rule requiring mutuality of parties may be relaxed where it is shown that the party against whom estoppel is sought to be applied had a fair opportunity to fully litigate an identical issue and where the identical issue was actually litigated, determined and essential to the judgment in the prior action. *McCrory v. Children's Hospital,* 28 Ohio App.3d 49, 28 OBR 61, 501 N.E.2d 1238 (1986). Collateral estoppel may bar relitigation of issues even where the issues were previously determined without a jury. *Id.* at 54, 28 OBR at 65–66, 501 N.E.2d at 1244–45.

■ Keeping those principles of Ohio law in mind, the court will now consider defendants' *res judicata* arguments. The first two state court decisions relied upon by defendants stem from a complaint filed in the Court of Common Pleas of Franklin County, Ohio on November 27, 1990 by Douglas Firestone and Amy del Valle. This was the second action filed by these plaintiffs in state court, the first having been an identical action filed in 1988 which was dismissed by plaintiffs without prejudice. Russell A. Firestone, III was named as a defendant in this second state court complaint. The state court complaint was virtually identical to the original complaint in federal court, and it included substantially the claims of tortious interference with an expectancy which are now being pursued by plaintiff. The state court action was filed after this court issued its July 3, 1990 order dismissing this action, and was apparently intended as a "backup" against further unfavorable determinations in the federal action. The judge in the state court action issued a show cause order warning that the case would be dismissed for want of prosecution after the plaintiffs failed to appear for trial on December 12, 1991. The Galbreath and Bricker defendants filed motions to dismiss and for summary judgment. Russell A. Firestone, III then presented an affidavit to the court in which he expressed support for the claims of the state court plaintiffs and urged that the case be allowed to proceed to trial, stating "if we can bring

this case to an evidentiary trial on the merits, we will win this case against the Galbreaths." *See* Motion of Galbreath defendants, Ex. Q–6.

On January 8, 1992, the common pleas court issued an order granting defendants' motion for summary judgment on the basis that the claims were barred by *res judicata*. The former judgment relied on as a bar was this court's order of July 3, 1990. The common pleas judge also found that dismissal was appropriate due to plaintiffs' failure to timely prosecute the action and to timely perfect service of process. The court dismissed the action with prejudice. *See Firestone v. Galbreath*, 90 CV–11–9187, unreported opinion (Ohio Com.Pl.1992), Motion of Galbreath defendants, Ex. Q–7.

The judgment of the common pleas court was appealed to the Ohio Court of Appeals, Tenth Appellate District. The opinion of the court of appeals was rendered on October 6, 1992. *See Firestone v. Galbreath*, 1992 WL 281167, 1992 Ohio App. LEXIS 5219 (1992). In this opinion, it is noted that some of the Firestone grandchildren had been realigned as plaintiffs. Plaintiff Russell A. Firestone, III appealed the trial court's judgment and was named in the caption as an appellant.

The court of appeals noted in its opinion of October 6, 1992 that the *res judicata* bar recognized by the trial court was based on this court's decision of July 3, 1990, in which this court found that the plaintiffs lacked standing to pursue claims on behalf of Dorothy Galbreath's estate and the Family Trust. The court of appeals concluded that this court's decision precluded relitigation of the issue of standing under the doctrine of collateral estoppel. The court of appeals then addressed the issue of standing, announced that it was in agreement with this court's interpretation of Ohio law, and concluded that the plaintiffs lacked standing to maintain the action on their own behalf or on behalf of the Family Trust and Dorothy Galbreath's estate. The court found that the appropriate procedure for recoupment of assets allegedly belonging to the estate and trust is that found in Ohio Revised Code § 2107.46, which provides for recoupment of assets by a fiduciary, and Ohio Revised Code § 2113.18, which provides for removal of an executor. The court of appeals declined to reach the propriety of the dismissal for failure to prosecute or to perfect service, noting Ohio Appellate Rule 12(A) which relieves the court of appeals of the need to address assignments of error which are rendered moot by a ruling on another assignment of error.

Following this decision, the plaintiffs moved for reconsideration, arguing that Ohio recognizes an action for tortious interference with an expectancy and that they had standing to assert such claims. The plaintiffs noted that the Sixth Circuit had certified to the Ohio Supreme Court the issue of whether the tort of tortious interference with an expectancy would be recognized by Ohio courts. The court of appeals concluded in a decision rendered on December 3, 1992 that even if this tort were recognized under Ohio law, the plaintiffs had no standing to assert such a claim on behalf of themselves. The court found that any such claim would belong to the estate of Dorothy Galbreath or to the Family Trust and would have to be pursued in accordance with Ohio probate procedure. The court further found that "[s]ince appellants' status as beneficiaries of the trust is too remote to permit them to have standing, particularly in light of the probate procedures under Ohio law to challenge such allegations, any action filed by appellants directly is improper." *See* Motion of Galbreath defendants, Ex. Q–9.

Plaintiffs appealed the decision of the court of appeals to the Ohio Supreme Court. The Ohio Supreme Court, although presumably aware of the earlier Sixth Circuit certification in the federal case, denied the motion to certify on February 24, 1993. *See Firestone v. Galbreath*, 66 Ohio St.3d 1420, 607 N.E.2d 843 (1993). Subsequently, in *Firestone v. Galbreath*, 67 Ohio St.3d 87, 616 N.E.2d 202 (1993), the Ohio Supreme Court held that a claim of tortious interference with an expectancy would be recognized under Ohio law, quoting the elements set forth in the Restatement of the Law 2d, Torts 58, § 774B (1979). The Ohio Supreme Court further held, *Id.* at 88, 616 N.E.2d at 203, that anyone who can prove the elements of the tort has the right to maintain the cause of action.

The claims of tortious interference with an expectancy in the state court action are basically the same claims which plaintiff now asserts in this court. The claims of tortious interference with an expectancy in both actions are based on the theory that the defendants wrongfully diverted property away from Dorothy Galbreath's estate, thereby reducing the residual estate which was to fund the Family Trust. Plaintiff's expectancy is whatever he would receive under the terms of the Family Trust. He has never alleged or produced any evidence that he expected to receive property from his grandmother by direct gift or inheritance or any other means aside from the Family Trust.

Plaintiff asserts that he was not an original plaintiff in the state court action, and that the judgment against the plaintiffs should not constitute a bar to his claims in this court. However, the parties in the common pleas action were also parties in the action filed in this court. Although plaintiff was originally named as a defendant in both actions, he was subsequently realigned in both as a plaintiff or an appellant. His interests in the state court action paralleled those of the plaintiffs and were adverse to those of the defendants. He manifested his interests by opposing the dismissal of the state court case for lack of prosecution and by appealing the dismissal. He participated in the state court action on both the trial court and appellate levels. Looking behind the initial designation of plaintiff as a defendant in the caption of the state court complaint, the court concludes that plaintiff was a party in the state court action and that his interests were adverse to those of the present defendants so as to permit the application of the claim preclusion branch of *res judicata.*

Finally, the decisions of the common pleas court and the court of appeals constitute a final judgment on the same claims which plaintiff seeks to assert here. The court of appeals not only concluded that the trial court properly dismissed the claims of tortious interference with an expectancy on the basis of *res judicata,* but further went on to hold that those claims were properly dismissed on the merits because the plaintiffs lacked standing to pursue those claims.

Plaintiffs argued in their motion for reconsideration that the court of appeals should recognize their right to bring claims for tortious interference with an expectancy in light of the Sixth Circuit's certification of the question of whether that tort exists under Ohio law. The court of appeals squarely decided this question as specifically applied to plaintiffs' claims, and held that even if the tort were recognized in Ohio, plaintiffs' interests were too remote to give them standing to assert these claims. The Ohio Supreme Court denied the motion to certify the decision of the court of appeals, and the judgments of the common pleas court and the court of appeals became final.

Plaintiff contends that these state court decisions should not operate as a *res judicata* bar in light of various later decisions, including a decision of a Florida probate court denying defendants' motion for summary judgment, the Ohio Supreme Court's decision recognizing the tort of tortious interference with an expectancy and the Sixth Circuit's opinion remanding the claims of tortious interference. The Florida court's decision is not a final judgment and has no preclusive effect. The Ohio Supreme Court in *Firestone,* 67 Ohio St.3d at 88, 616 N.E.2d at 203, decided the two legal questions certified by the Sixth Circuit in the abstract, and did not apply those legal principles to the parties or claims in this case. The Ohio Supreme Court no doubt could have granted plaintiffs' motion to certify and consolidated plaintiffs' appeal from the Tenth District Court of Appeals with its consideration of the questions certified to it by the Sixth Circuit but it did not. Instead, it overruled plaintiffs' motion to certify, which had the effect of making the decision of the court of appeals a final judgment.

The Sixth Circuit in *Firestone,* 25 F.3d at 325–326, rejected defendants' argument that as a matter of law, a prospective residual trust beneficiary always lacks a sufficiently defined expectancy to pursue a claim of tortious interference with an expectancy. However, the Sixth Circuit made no determination as to whether plaintiff could prove a sufficiently definite expectancy of inheritance in this case. The Ohio court of appeals held

that plaintiff's interest as a prospective residual trust beneficiary was not sufficient. Insofar as the Sixth Circuit's interpretation of the nature of the tort under Ohio law differs from that of the Ohio court of appeals, the prior opinions of the Ohio court of appeals would prevail. Further, the Sixth Circuit expressly declined to resolve the impact of its own decision and that the Ohio Supreme Court on the lower state court decisions with regard to issue and claim preclusion. *Id.* at 327.

The decisions of the Ohio common pleas court and court of appeals became final before the Ohio Supreme Court decision and the most recent Sixth Circuit decision were rendered. Even if it is assumed that the decisions of the lower state courts were erroneous, this would not preclude their use as a *res judicata* bar under Ohio law. This court further notes that the alternative bases for the common pleas court's judgment, dismissal for failure to prosecute and to perfect service, still stand, and that the dismissal for failure to prosecute was also a dismissal on the merits under Ohio law for purposes of claim preclusion. This court concludes that plaintiff's claims of tortious interference with an expectancy are barred under the claim preclusion branch of the *res judicata* doctrine as applied under Ohio law by reason of the above judgments of the Franklin County Common Pleas Court and the Tenth District Court of Appeals.

Defendants also argue that the decisions of the Tenth District Court of Appeals warrant the application of a collateral estoppel bar, or issue preclusion. Here, plaintiff was a party to the state court action, and there was a final judgment on the merits after plaintiff had a full and fair opportunity to litigate the issue. The issue before the Ohio court of appeals on the motion for reconsideration was identical to an issue in this case, that being, whether plaintiff had an expectancy of inheritance sufficient to give him a legal right to pursue a claim of tortious interference with an expectancy, the existence of an expectancy of inheritance in the plaintiff being one of the elements of the tort.

It must also be shown that the issue was tried and decided in the previous proceeding and that decision of the issue was necessary to the judgment. The issue of plaintiff's right to assert a claim of tortious interference with an expectancy was clearly raised by the plaintiffs in the proceedings upon reconsideration and was decided by the court. It might be argued that the court of appeals did not need to address the merits of the standing issue in the initial appeal in considering whether the trial court properly dismissed the complaint on the basis of *res judicata*. However, addressing plaintiff's right to pursue claims of tortious interference with an expectancy based upon his rights under the Family Trust was necessary to the court of appeals' judgment on the motion for reconsideration, in which plaintiff and the other appellants requested the court of appeals to hold that they had standing to bring such claims. The court concludes that all of the prerequisites for collateral estoppel are satisfied here, and that collateral estoppel bars relitigation of the issue of plaintiff's right to assert the claims of tortious interference with an expectancy advanced in this case.

Defendants also argue that the March 14, 1995 and May 10, 1995 orders of the Franklin County Probate Court should have preclusive effect. In the March 14th order, the probate court dismissed various counterclaims which had been filed by plaintiff with the probate court, including claims of tortious interference with an expectancy. *See* Motion of Galbreath defendants, Ex. Q–20. The probate court found that it lacked jurisdiction to entertain plaintiff's counterclaims, and further noted that even if it had jurisdiction, plaintiff's litigation of those claims was barred by the decision of the Tenth District Court of Appeals in the Ohio action. The probate court also found that plaintiff lacked standing to pursue the claims of tortious interference with an expectancy.

In its order of May 10, 1995, the probate court considered the application of James Petropoulos, who was appointed as successor trustee of the Family Trust following Daniel Galbreath's resignation from that position on February 17, 1993, to approve a proposed offer from Daniel Galbreath as executor of the Estate of John Galbreath to purchase an

assignment of the interest of the Family Trust in the Estate of Dorothy Galbreath and to secure a release and assignment of other claims of the Family Trust. All of the Firestone grandchildren, with the exception of plaintiff, agreed to this proposed settlement. The probate court approved the settlement agreement after giving plaintiff the opportunity to express his objections. The probate court again noted its March 14th decision finding that plaintiff lacked standing to pursue his claims, as well as the decision of the Tenth District Court of Appeals.

It does not appear from the record presently before the court that the decisions of the probate court would result in a *res judicata* bar. The parties in the probate court action have not been shown to be identical, since Daniel Galbreath appeared there in his capacity as the executor of Dorothy Galbreath's estate, not in his individual capacity or as executor of John Galbreath's estate, and the record does not reveal that any of the other defendants in the instant action participated in the probate court proceedings. Further, the probate court held that it lacked jurisdiction over plaintiff's counterclaims of tortious interference with an expectancy, and a decision by a court which lacks subject matter jurisdiction does not create a *res judicata* bar. Likewise, the record is not clear that these probate court decisions would create a collateral estoppel bar, since it is not apparent that plaintiff's lack of standing to assert tortious interference with an expectancy claims was a determination necessary to the resolution of the matters before the court. Although these decisions of the probate court do not create a *res judicata* bar to plaintiff's claims, they are nonetheless instructive as the viewpoint of an Ohio court on the issues of standing and the preclusive effect of the Ohio court of appeals' decisions.

■ The Galbreath defendants also argue that plaintiff's claims of tortious interference with an expectancy are barred due to plaintiff's failure to exhaust his probate court remedies. They note, for example, the provisions of Ohio Revised Code § 2107.46, requiring a party in interest to demand that a fiduciary bring an action to recover assets on behalf of a trust or estate; Ohio Revised Code § 2109.24, authorizing an action to obtain the appointment of a new fiduciary; and Ohio Revised Code § 2109.50 *et seq.*, which authorize a fiduciary to take action to recover assets wrongfully diverted from an estate.

Courts in some jurisdictions have held that a claim for tortious interference with an inheritance may not be pursued if adequate relief is available to the plaintiff through probate procedures such as a will contest. *See e.g., Moore v. Graybeal,* 843 F.2d 706 (3d Cir.1988); *Maxwell v. Southwest Nat'l Bank,* 593 F.Supp. 250 (D.Kan.1984); *McGregor v. McGregor,* 101 F.Supp. 848 (D.Colo.1951), *aff'd,* 201 F.2d 528 (10th Cir.1953). *See also McMullin v. Borgers,* 761 S.W.2d 718 (Mo. App.1988); *In re Estate of Hoover,* 160 Ill. App.3d 964, 112 Ill.Dec. 382, 513 N.E.2d 991 (1987); *Griffin v. Baucom,* 74 N.C.App. 282, 328 S.E.2d 38 (1985); *Robinson v. First State Bank,* 97 Ill.2d 174, 73 Ill.Dec. 428, 454 N.E.2d 288 (1983); *DeWitt v. Duce,* 408 So.2d 216 (Fla.1981); *Axe v. Wilson,* 150 Kan. 794, 96 P.2d 880 (1939).

Other courts have concluded that it is not necessary for a plaintiff to pursue probate procedures if there is no remedy available in probate court or if that remedy would be inadequate. *See e.g. Glickstein v. Sun Bank/Miami, N.A.,* 922 F.2d 666 (11th Cir. 1991); *Huffey v. Lea,* 491 N.W.2d 518 (Iowa 1992); *In re Estate of Jeziorski,* 162 Ill. App.3d 1057, 114 Ill.Dec. 267, 516 N.E.2d 422 (1987). Courts must look to whether the probate court can provide the plaintiff with adequate relief in the form of the actual damages which would be recovered in the tort action; punitive damages awards are not considered a valid expectation in this context. *Estate of Hoover,* 160 Ill.App.3d at 965–66, 112 Ill.Dec. at 383, 513 N.E.2d at 992. Courts may also consider whether the particular state probate court had jurisdiction over the tort claim and whether it was possible to litigate all issues in the probate court. *Huffey,* 491 N.W.2d at 522.

The gist of plaintiff's claims is that the defendants wrongfully obtained property from Dorothy Galbreath prior to her death which should have become a part of her residual estate, bequeathed to the Family

Trust. In the instant case, the probate court determined that it had no jurisdiction to entertain plaintiff's claims of tortious interference with an expectancy. However, defendants note Ohio Revised Code § 2109.50, which provides for proceedings quasi-criminal in nature whereby the probate court can recover assets which rightfully belong in an estate. *In re Estate of Fife v. Beck,* 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185 (1956). Under Ohio Revised Code § 2109.52, if the person in possession of the assets is found guilty of concealing, embezzling or conveying away assets of the estate, the probate court may assess damages, order the return of the specific property, or order restitution in kind. These procedures would permit the recovery of any assets wrongfully obtained by fraud or undue influence and would accomplish the same goal as an action for tortious interference with an expectancy based upon the alleged wrongful transfer of assets. However, the probate court concluded that it did not have jurisdiction over plaintiff's claims of tortious interference with an expectancy as such.

The Ohio Supreme Court declined to address the issue of whether exhaustion of probate remedies is a prerequisite to an action for tortious interference with an expectancy since this issue was not certified. *Firestone,* 67 Ohio St.3d at 88, 616 N.E.2d at 203. However, the Tenth District Court of Appeals concluded in its opinion of October 7, 1992 that the plaintiff was required to comply with the demand provisions of § 2107.46 before bringing suit, and that the state court action was barred due to plaintiff's failure to do so. In its decision of December 3, 1992, the court of appeals held that even if the Ohio Supreme Court recognized an action for tortious interference with an expectancy, "appellants would have to bring the action pursuant to Ohio probate procedure to assert such a claim on behalf of the trust." Motion of Galbreath defendants, Ex. Q–9. Since the only alleged expectancy asserted by plaintiff in his amended complaint is the money he expected to receive from the Family Trust, this court is constrained under the principles of *res judicata* to follow the law as pronounced by the Tenth District court of Appeals, and to find that plaintiff's claims are barred by his failure to exhaust appropriate probate procedures under § 2107.46.

■ The Galbreath and Bricker defendants also contend that they are entitled to summary judgment because plaintiff cannot prove the elements of tortious interference with an inheritance or expectancy. In recognizing this tort, the Ohio Supreme Court adopted the definition contained in Restatement of the Law 2d, Torts 58, § 774B, which states:

> One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift.

The Ohio Supreme Court also noted Comment d to § 774B at 59, which states that "there must be proof amounting to a reasonable degree of certainty" or "reasonable certainty established by proof of a high degree of probability that the testator would have made a particular legacy or would not have changed it" if there had been no tortious conduct or interference by the defendant. The Ohio Supreme Court described the elements of the tort as follows: 1) an existence of an expectancy of inheritance in the plaintiff; 2) an intentional interference by the defendant with that expectancy of inheritance; 3) conduct by the defendant involving the interference which is tortious, such as fraud, duress or undue influence, in nature; 4) a reasonable certainty that the expectancy of inheritance would have been realized, but for the interference by the defendant; and 5) damages resulting from the interference.

Defendants argue that plaintiff cannot prove an expectancy of inheritance to a reasonable degree of certainty, or that, but for the alleged conduct of the defendants, he would have received a share of the allegedly wrongfully diverted property. Plaintiff must show something more than a mere expectancy in the estate or trust to establish a cause of action. *Beren v. Ropfogel,* 24 F.3d 1226 (10th Cir.1994); *McKibben v. Chubb,* 840 F.2d 1525 (10th Cir.1988); *Cunningham v. Edward,* 52 Ohio App. 61, 6 O.O. 98, 3 N.E.2d 58 (1936) (mere naked possibility of

interest in property not sufficient). Plaintiff must prove that there was a reasonable certainty that he would have received his interest but for the defendants' intentional interference. *Firestone*, 67 Ohio St.3d at 88, 616 N.E.2d at 203; *Robinson v. First State Bank*, 104 Ill.App.3d 758, 60 Ill.Dec. 488, 433 N.E.2d 285 (1982).

The only basis of expectancy asserted by plaintiff is as a potential beneficiary of the Family Trust. Under the terms of the Family Trust Agreement dated October 31, 1978, upon the death of Mrs. Galbreath, the trust was to be divided into as many separate trusts as there were grandchildren. The trustee was authorized to distribute funds for the maintenance of each grandchild, or to establish any grandchildren in business or marriage. Upon reaching the age of thirty-five, each grandchild could withdraw up to one-half of the value of his or her own trust account. Upon reaching forty, the grandchild was given the power to withdraw the entire balance of his or her own trust account. Russell A. Firestone, III is presently twenty-three years of age. The Trust Agreement further provided that if any grandchild died prior to reaching the age of thirty-five, his or her trust would be divided equally among the remaining trusts, whereas if the grandchild died after reaching thirty-five, his or her trust assets would be distributed as specified in the will of that grandchild. The Trust document also stated that Mrs. Galbreath's estate taxes, funeral expenses, and the costs of administration of her estate were to be paid out of the trust assets. *See* Motion of Bricker defendants, Ex. 39. The Trust was initially funded with a cash deposit of twenty dollars, and no provision for an additional funding of the trust corpus was made in the Family Trust itself. Under the terms of the will of Dorothy Galbreath, her residual estate is devised to Daniel Galbreath as trustee of the Family Trust, to be allocated as specified in the Family Trust Agreement.

Defendants argue that plaintiff's expectancy is indefinite because the ultimate number of beneficiaries was uncertain, and because it was indefinite whether the Trust would ever be funded beyond the initial corpus or would ever have funds available to dispense to the beneficiaries after the payment of estate taxes and expenses.

Defendants further argue that plaintiff cannot sustain his burden of proving to a reasonable certainty that he would have received the inheritance by way of the Family Trust because of events which occurred after the death of Dorothy Firestone. The Galbreath defendants have couched this argument in terms of plaintiff's claims being moot. The Galbreath defendants further assert that it would be inequitable to grant plaintiff the relief he seeks because it would do violence to the intent of Mrs. Galbreath.

Defendants first argue that plaintiff cannot prove a reasonably certain expectancy because the Franklin County Probate Court has determined that plaintiff has triggered the spendthrift clause of the Family Trust. In an order filed on March 14, 1995, the probate court addressed the request of James Petropoulos, the successor trustee, for instructions as to whether certain acts or occurrences had triggered the operation of the spendthrift provision of the Family Trust. The document creating the Family Trust contained a standard nonalienation or spendthrift clause which provided that if the interest of any grandchild was anticipated, assigned, alienated or encumbered, or if any grandchild attempted to anticipate, assign, alienate, encumber or otherwise dispose of his or her interest in the trust, the interest of that grandchild in the trust ceases, and any payment of trust funds to that grandchild is then at the sole discretion of the trustee. The probate court construed this clause to mean that if the spendthrift provision is triggered, the beneficiary looses all powers previously granted by the trust, including the power to demand distribution, and that beneficiary's trust assets may then be distributed to the other grandchildren or to the beneficiary at the discretion of the trustee.

The probate court was asked to determine whether the act of plaintiff and other Firestone grandchildren in signing an agreement with Crestar Bank, in which Crestar agreed to act as successor trustee of the Family Trust and to assign the claims of the Family Trust to the beneficiaries, triggered the

spendthrift clause. The probate court found that the execution of the Crestar agreement constituted an anticipation and assignment of the beneficiaries' rights which invoked the spendthrift provisions of the Family Trust. The probate court further found that plaintiff had triggered the spendthrift clause due to attorney liens. The probate court concluded that plaintiff's interest in the Family Trust had ceased, and directed the trustee to administer plaintiff's share of the trust as a discretionary Family Trust. These determinations by the probate court are conclusive as to these issues. The record does not reflect that the decision of the probate court has been overturned, and the decision appears to be an order affecting a substantial right in a special proceeding so as to qualify as a final judgment under Ohio Revised Code § 2505.02. The decision meets the criteria for the application of collateral estoppel under the relaxed mutuality requirements discussed in *McCrory*. Under the ruling of the probate court, plaintiff has no legally enforceable claim against the Family Trust.

Defendants further argue that any right of expectancy plaintiff may have had to property which allegedly should have passed to the Family Trust from Dorothy Galbreath's estate was curtailed when the trustee executed a settlement agreement assigning any interest or claims which the Family Trust had in or against Mrs. Galbreath's estate to John Galbreath's estate. This settlement was approved by the Franklin County Probate Court in its order of May 10, 1995 as being in the best interests of the Family Trust and its beneficiaries. Although plaintiff attacks the validity of this assignment, the record indicates that the judgment approving the settlement was entered after plaintiff had a full and fair opportunity to litigate the reasonableness of the settlement. The probate court found that plaintiff's objections to the settlement agreement were unclear and unsupported by any evidence, and that the interests of the Family Trust and the beneficiaries as a whole outweighed any concerns expressed by plaintiff. Plaintiff is precluded under the principles of collateral estoppel from relitigating the reasonableness of the settlement in this court. The impact of the settlement agreement is that the Family Trust no longer has any claim against the assets, current or otherwise, of Dorothy Galbreath's estate. Therefore, the Family Trust no longer has any interest in any claims which the Estate of Dorothy Galbreath might assert for the wrongful conversion of Dorothy Galbreath's property during her lifetime.

This court has been unable to find any guidance from courts of the various jurisdictions which have recognized an action for tortious interference with an inheritance as to what impact developments occurring after the testator's death have on the potential beneficiaries' tort claims. Plaintiff argues that whatever rights he had against the defendants accrued at the time of his grandmother's death. However, the subsequent events cannot be ignored because they impact upon the nature of plaintiff's interest in the Family Trust. Even if the application of the spendthrift clause and the assignment of the Family Trust's interest in Dorothy Galbreath's estate are not deemed to *per se* foreclose plaintiff's tort claims, these events certainly serve to demonstrate the tenuous, contingent and indefinite nature of plaintiff's expectancy. The amount plaintiff could expect to obtain from the Family Trust was influenced not only by the size of Dorothy Galbreath's residual estate and the amount of estate taxes and expenses, but also by potential actions of the trustee, who was granted broad powers of administration and discretionary authority under the Trust Agreement, the number of beneficiaries and whether they survived long enough to be able to demand distribution, and the spendthrift clause. This court cannot conceive how it would be possible to place a present dollar value on such an elusive future interest.

The court concludes, considering the totality of the circumstances in this case, that plaintiff has not demonstrated that he could prove that he had more than a mere possibility of an inheritance or that there was a reasonable certainty that, but for the tortious acts of the defendants, that inheritance would have been realized.

■ Defendants Daniel Galbreath, James and Joan Phillips, and Lizanne Galbreath Megrue allege that plaintiff cannot prove

that they intentionally interfered with his expectancy of inheritance because they were unaware of the contents of Dorothy Galbreath's will and did not know her testamentary intent. The Bricker defendants assert that it cannot be shown that they acted with the intent to interfere with plaintiff's expectancy of inheritance or that they interfered through tortious conduct.

■ As previously noted, the Ohio Supreme Court has held that in order to prove tortious interference with an expectancy, the plaintiff must show an intentional interference by the defendants with that expectancy, and the conduct by the defendants involving the interference must be tortious, such as fraud, duress or undue influence. *Firestone,* 67 Ohio St.3d at 88, 616 N.E.2d at 203. Constructive fraud is not sufficient, and proof of actual intent is required. *Peffer v. Bennett,* 523 F.2d 1323 (10th Cir.1975); *Hegarty v. Hegarty,* 52 F.Supp. 296, 299 (D.Mass. 1943) (must show that defendants intentionally interfered and that they knew they were interfering); *Huffey,* 491 N.W.2d at 521 (wrongdoer's unlawful intent to prevent another from receiving an inheritance is the key issue). The interference must be conduct tortious in itself. *Nemeth v. Banhalmi,* 99 Ill.App.3d 493, 55 Ill.Dec. 14, 425 N.E.2d 1187 (1981). Negligent conduct is not sufficient. Restatement of the Law 2d, Torts 58, § 774B, Comment a.

■ Although Ohio courts have not specifically defined what constitutes "intentional" interference with an inheritance, tortious interference with an inheritance has often been analogized to the tort of wrongful interference with a contract or business relationship. *See e.g., Doughty v. Morris,* 117 N.M. 284, 871 P.2d 380 (N.M.App.1994); *Cyr v. Cote,* 396 A.2d 1013, 1018 (Me.1979). Under Ohio law, a tortious interference with a business relationship occurs when a person without privilege induces or otherwise purposely causes a third party not to enter into or continue a business relationship or perform a contract with another. *Elwert v. Pilot Life Ins. Co.,* 77 Ohio App.3d 529, 602 N.E.2d 1219 (1991). The elements of this tort include knowledge on the part of the alleged wrongdoer of the existence of the business

relationship between the plaintiff and the third party and an intent on the part of the alleged wrongdoer to interfere with that relationship. *Wolf v. McCullough–Hyde Memorial Hosp., Inc.,* 67 Ohio App.3d 349, 586 N.E.2d 1204 (1990). Applying these cases by analogy to the similar tort of tortious interference with an expectancy, plaintiff would have to prove that the defendants had knowledge that Dorothy Galbreath intended for certain property to pass by way of her residual estate to the Family Trust, and that defendants acted with the intent to wrongfully deprive plaintiff of that inheritance. The individual Galbreath defendants referred to above have submitted evidence that they had no knowledge of the contents of Dorothy Galbreath's will. The evidence submitted by defendants reveals that Dorothy Galbreath asked Daniel Galbreath to be the executor of her estate and he agreed to this, but that he did not know the other provisions of the will. There is evidence that while Mrs. Galbreath was discussing a draft will with David Cummins, an attorney at Bricker and Eckler, John Galbreath stopped in briefly to make sure his wife was getting along all right and to mention that he didn't want anything from his wife. Although plaintiff claims that this brief encounter demonstrates that John Galbreath and the other Galbreath defendants must have gained knowledge of the contents of the will, this evidence alone is not sufficient to permit a reasonable inference that the individual Galbreath defendants knew about the provisions of the will. Plaintiff has failed to point to any specific evidence from which a jury could reasonably find that the above individual Galbreath defendants had any knowledge of the bequests contained in Mrs. Galbreath's will. Likewise, plaintiff has pointed to no evidence which would support a finding that any individual Bricker defendant other than David Cummins, who drafted the will, had any knowledge of its contents. Plaintiff has not shown the existence of any genuine issue of material fact in regard to the intent element as to the above defendants.

The Bricker defendants further argue that plaintiff has not adequately alleged fraudulent conduct, and that he has not demonstrat-

ed that he could prove that they engaged in tortious conduct such as fraud, duress or undue influence.

In order to establish fraud under Ohio law, there must be: 1) a representation or, where there is a duty to disclose, a concealment of a fact; 2) which is material to the transaction at hand; 3) made falsely, with knowledge of its falsity or with such utter disregard as to whether it is true or false that knowledge may be inferred; 4) with the intent of misleading another into relying on it; 5) justifiable reliance upon the representation or concealment; and 6) a resulting injury proximately caused by the reliance. *Burr v. Stark Cty. Bd. of Commrs.*, 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101 (1986). Under Fed.R.Civ.P. 9(b), plaintiff must allege fraud with particularity.

The elements of undue influence are: 1) a susceptible party; 2) another's opportunity to influence the susceptible party; 3) the actual or attempted imposition of improper influence; and 4) a result showing the effect of the improper influence. *West v. Henry*, 173 Ohio St. 498, 20 O.O.2d 119, 184 N.E.2d 200 (1962).

Duress is established where it is shown that: 1) one person involuntarily accepted terms offered by another; 2) circumstances permitted no other alternative; and 3) the circumstances were the result of coercive acts of the opposite party. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 551 N.E.2d 1249 (1990).

The allegations against the Bricker defendants in plaintiff's First Amended Complaint concern the alleged involvement of Bricker and Eckler attorney David Cummins in the drafting of Dorothy Galbreath's will, the preparation of the deed for the Saratoga property, Bricker and Eckler's involvement in the preparation of powers of attorney and litigation concerning gift and estate tax returns, and the alleged role of John Phillips as manager of Darby Dan Farms.

In regard to the drafting of Dorothy Galbreath's will, defendants have presented evidence that the will was prepared by David Cummins based upon the instructions he received from Dorothy Galbreath. This evidence includes notes prepared by Cummins on June 1, 1978 during a conference with Dolorees Dutoit, who acted as a secretary for Dorothy Galbreath and a cover letter to Mrs. Galbreath dated August 28, 1978 which accompanied a draft of the will sent to Mrs. Galbreath for her consideration. Cummins testified at his deposition that he had several meetings with Mrs. Galbreath concerning the preparation of the will. When the will was executed, only Mrs. Galbreath, Dutoit and Cummins were in the room. Mrs. Galbreath had been sent a draft of the will before the date it was executed, and Mr. Cummins asked her to check each page to make sure it was what she had seen previously. The court has not been referred to any evidence which would support a finding that any of the Galbreaths were informed about the bequests in the will.

Plaintiff alleges that the terms of the will were dictated by John and Daniel Galbreath and Dolorees Dutoit. However, plaintiff has pointed to no specific evidence which would support this contention. He has also failed to allege or demonstrate facts which would reasonably support a finding that any of the Bricker defendants engaged in fraud, undue influence, or duress in connection with the drafting of the will, or that they knowingly and intentionally conspired with any of the Galbreath defendants in acts of fraud, duress or undue influence.

Plaintiff alleges that Bricker and Eckler knew or should have known that Dorothy Galbreath's intent was to leave most of her estate to her Firestone grandchildren, and that Bricker and Eckler failed to devise an estate plan to effectuate that intent, failed to adequately inform Mrs. Galbreath of the nature of her assets or to inquire as to her true testamentary intent, failed to advise her of the effect of the bequests to Galbreath family members or the tax consequences of her will, and acted under a conflict of interest due to the firm's representation of the Galbreaths. These allegations at most amount to negligence or malpractice. The Bricker defendants have cited Ohio cases in which courts have looked behind other tort labels placed upon malpractice claims. While these

cases address the issue of what statute of limitations should apply, the underlying principle is equally applicable here, namely, that malpractice by any other name still constitutes malpractice. *Muir v. Hadler Real Estate Mgt. Co.*, 4 Ohio App.3d 89, 90, 4 OBR 170, 171–172, 446 N.E.2d 820, 822 (1982). While one's status as an attorney will not shield him from liability for tortious interference with an expectancy if all of the elements of that tort are alleged and proved, tortious interference with an expectancy is not established by allegations or proof amounting to mere negligence or malpractice. Plaintiff has failed to allege or to demonstrate that he can prove that the Bricker defendants acted tortiously in connection with the preparation of the will. At most, he has alleged negligence or malpractice against the Bricker defendants, and under the Ohio rules of privity, plaintiff may not maintain such a claim, which belongs to Mrs. Galbreath's estate. *Simon v. Zipperstein*, 32 Ohio St.3d 74, 512 N.E.2d 636 (1987). *See also, Firestone v. Galbreath*, 747 F.Supp. 1556, 1572 (S.D.Ohio 1990), *aff'd* 976 F.2d 279, 286–287 (6th Cir. 1992).

Plaintiff alleges in paragraph 154 of the amended complaint that Bricker and Eckler actively participated in the wrongful transfer of assets to the Galbreaths after Dorothy Galbreath's incompetence. This allegation, which is devoid of specific assertions as to person, time, and place or fraudulent or tortious intent, is insufficient to plead fraud, duress or undue influence against any of the Bricker defendants.

The amended complaint includes allegations concerning the transfer of the Saratoga property. This was a residence owned by Mrs. Galbreath which was located in Saratoga, New York. Mrs. Galbreath and her husband, John Galbreath, used this residence during the horse racing season in Saratoga. In her will executed in 1978, she gave her husband, John Galbreath, a life estate in this property and a first option to buy the remainder interest in the property. Motion of Bricker defendants, Ex. 5. Defendants have presented evidence indicating that on June 29, 1981, John Eckler was notified that Mrs. Galbreath wanted to sell the Saratoga property to her husband, and Eckler was asked to prepare a deed. Defendant Waterman did some work in connection with drafting the deed. On June 30, 1981, Eckler went to Darby Dan Farm and met with John and Dorothy Galbreath. He observed that Mrs. Galbreath looked surprisingly well despite her illness and that when he started to introduce himself, Mrs. Galbreath stated "Oh, John, I know you." She indicated that she understood the nature of the transaction and that she wanted to sell the house and its furnishings to her husband. Eckler observed her sign and acknowledge the deed. During the meeting, Mrs. Galbreath discussed racing and the good times she had had at Saratoga. Charles Waterman was asked by Eckler the next day to execute the certificate of conformity.

Plaintiff alleges that Eckler and Waterman should have known that Dorothy Galbreath was not competent when she signed the deed, and that Bricker and Eckler knew that the property was wrongfully transferred. However, plaintiff has pointed to no specific evidence which supports these allegations. The evidence submitted by the defendants reveals no basis for Eckler to question Mrs. Galbreath's competency at the time, and there is no evidence that Waterman ever met Mrs. Galbreath personally or that he was familiar with the contents of her will. Plaintiff has failed to demonstrate that he could prove that the Bricker defendants engaged in fraud, duress or undue influence in connection with the Saratoga deed.

Plaintiff further alleges that Bricker and Eckler participated in the signing of an invalid power of attorney and refused to protect Mrs. Galbreath's interests. The Bricker defendants have presented evidence that the power of attorney prepared by Bricker and Eckler was never executed, and plaintiff has pointed to no specific evidence which would support a contrary finding. Plaintiff further alleges that Bricker and Eckler participated in filing gift tax returns and misrepresented to the Internal Revenue Service that the gifts were valid. He further alleges that Bricker and Eckler omitted property from Dorothy Galbreath's estate tax returns. The Bricker defendants have stated and present-

ed evidence that Bricker and Eckler did not prepare or file the gift tax returns and that their role was limited to the proceedings before the IRS which concerned the value of the reported gifts, not their validity. Plaintiff's allegations concerning these gift and estate tax returns are insufficient to allege fraud, duress, or undue influence, and plaintiff has not established that he could prove that the Bricker defendants acted tortiously.

Plaintiff further alleges that John Phillips, a partner at Bricker and Eckler and the son of defendants James and Joan Phillips, took an active role in the management of Darby Dan Farm and determined what the Farm would charge Dorothy Galbreath for the maintenance of her horses. The allegations against John Phillips fail to allege fraud with particularity, and likewise do not allege duress or undue influence.

Finally, plaintiff alleges that the Bricker defendants participated in a conspiracy with the Galbreath defendants for the purpose of tortiously interfering with plaintiff's expectancy of inheritance from his grandmother. These allegations do not meet the particularity requirements for fraud, and do not allege facts which would satisfy the elements of duress or undue influence.

The Galbreath defendants further assert that plaintiff's claims against the Estate of John Galbreath should be dismissed due to plaintiff's failure to timely present a claim to the executor of the estate. The record reveals that John Galbreath died on July 20, 1988, and Daniel Galbreath was appointed as executor of the estate on July 25, 1988. On September 22, 1988, Douglas B. Firestone and Amy del Valle demanded that Daniel Galbreath, as executor of the Estate of Dorothy Galbreath, present claims against the Estate of John Galbreath. On October 20, 1988, Daniel Galbreath, as executor of the Estate of Dorothy Galbreath and trustee of the Dorothy Bryan Galbreath Family Trust, presented a claim to himself as executor of the Estate of John Galbreath on behalf of the Dorothy Galbreath estate and the Family Trust. While this presentation of claims makes reference to "those elements of a presentation, if any, contained in the aforementioned written demand for presentation which may exist on behalf of all other parties similarly situated to Amy Firestone del Valle and Douglas B. Firestone," no claims on behalf of plaintiff were referenced in that written demand. Daniel Galbreath had no authority to present claims on behalf of plaintiff against the John Galbreath estate. Plaintiff himself presented no claims against the estate.

■ Under the provisions of Ohio Revised Code § 2117.06 which were in effect at the time of John Galbreath's death, creditors were obligated to present their claims to the executor of the estate within three months of the appointment of the executor. Under the provisions of former Ohio Revised Code § 2117.07, this three-month period could be extended to four months under certain conditions, including the legal disability of the claimant during any part of the period for filing a claim. Claims which were not presented within the applicable three or four-month period are barred. Presentation of claims within the prescribed time is mandatory, *Prudential Ins. Co. v. Joyce Bldg. Realty Co.*, 143 Ohio St. 564, 28 O.O. 480, 56 N.E.2d 168 (1944), and may not be waived by the executor. *Fortelka v. Meifert,* 176 Ohio St. 476, 27 O.O.2d 439, 200 N.E.2d 318 (1964) (the presentment requirement is mandatory); *Varisco v. Varisco,* 91 Ohio App.3d 542, 632 N.E.2d 1341 (1993); *In re Estate of Kennedy,* 46 Ohio App.3d 128, 546 N.E.2d 220 (1988); Former Ohio Revised Code § 2117.07(c).

■ Since Daniel Galbreath had no authority to present claims on behalf of the plaintiff, and since plaintiff himself presented no timely claims to the executor of John Galbreath's estate, his claims against the estate are barred under Ohio law. Plaintiff is also precluded from pursuing any claims for punitive damages against the estate. *See Friedman v. Labos,* 23 Ohio L.Abs. 217 (App. 1936) (punitive damages cannot be recovered from the estate of a tortfeasor). The Estate of John Galbreath is entitled to summary judgment on these grounds.

The Galbreath defendants have moved for summary judgment on behalf of Darby Dan Farm, the John W. Galbreath Trust and

John W. Galbreath's Darby Dan Farm Trust on the additional grounds that the complaint fails to allege tortious conduct on the part of or in connection with the formation or administration of these entities. Plaintiff has no standing to pursue a remedy of constructive trust against these defendants and has not pleaded constructive trust as a remedy in his first amended complaint. Defendants further allege that defendant Darby Dan Farm was a mere dba for John Galbreath during the time period relevant to plaintiff's claims, that it had no separate legal existence, and that any claims against Darby Dan Farm are in reality claims against the Estate of John Galbreath which are barred due to plaintiff's failure to present his claims to the executor of the estate. Plaintiff has not specifically responded to this branch of defendants' motion, and the court finds that summary judgment in favor of Darby Dan Farm, the John W. Galbreath Trust and John W. Galbreath's Darby Dan Farm Trust is appropriate on those additional grounds.

The Bricker defendants further argue that defendant Eckler is entitled to summary judgment because plaintiff failed to move pursuant to Fed.R.Civ.P. 25(a)(1) or Fed.R.App.P. 43(a) for substitution of the executor of Eckler's estate as a party after a suggestion of death was filed with the record while this case was pending before the Sixth Circuit Court of Appeals. Rule 25(a)(1) provides in part:

> If a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties.... Unless the motion for substitution is made not later than 90 days after the death is suggested upon the record by service of a statement of the fact of the death as provided herein for the service of the motion, the action shall be dismissed as to the deceased party.

Fed.R.App.P. 43(a) contains similar provisions for substitution of a party while a case is pending on appeal and incorporates the procedures specified in Fed.R.Civ.P. 25(a)(1) for service of the motion for substitution.

In this case, a formal suggestion of Eckler's death was filed with the record in the court of appeals on June 13, 1994 and was served on counsel for plaintiff in accordance with Rule 25(a)(1). Plaintiff made no motion to substitute Eckler's estate as a party within the ninety-day period after the filing of the suggestion of death. Plaintiff has not specifically responded to this branch of the Bricker defendants' motion, and apparently concedes this point. He has not shown good cause for an extension of the time limits for filing the motion. Plaintiff's claims against defendant Eckler are dismissed due to plaintiff's failure to move to substitute Eckler's estate as a party pursuant to Rule 25(a)(1).

The court concludes that defendants are entitled to summary judgment, and that plaintiff has not sustained his burden of demonstrating the existence of genuine issues of material fact relevant to the arguments made by the defendants. The defendants have fulfilled their obligation of producing evidence which supports their position while demonstrating the absence of evidence which would support plaintiff's case and of directing this court's attention to specific parts of the record which buttress their arguments. In contrast, plaintiff has submitted a lengthy, rambling memorandum contra containing few citations to legal authorities and no precise directions for locating evidence in plaintiff's voluminous appendix.

As previously stated, this court has no duty to search the entire record for evidence which supports plaintiff's position or demonstrates a genuine issue of fact. *Street,* 886 F.2d at 1479. See also *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989) (district court not required to speculate on which portion of the record the non-moving party relies, nor is court obliged to "wade through" the record for specific facts). In *Guarino v. Brookfield Township Trustees,* 980 F.2d 399 (6th Cir.1992), the court concluded that the district court correctly relied on evidence designated by the defendants and that the district court was not obliged to search for evidence which might create a genuine issue of fact in a three-volume appendix containing over 660 pages of material. The court noted that Fed.R.Civ.P. 56(e) places the burden on the adverse party to set forth or designate specific facts showing there is a genuine issue for trial. *Id.* at 405.

The court went on to state that requiring the trial court to *sua sponte* examine the entire record would result in a substantial and needless expenditure of judicial resources, would require the court to perform a task which the attorneys familiar with the case are better equipped to handle, and would require the court to abandon its neutrality by searching the record for evidence or legal theories favorable to the non-moving party. *Id.* at 405–406.

In this case, plaintiff has filed an appendix of exhibits to his memorandum contra defendants' motions for summary judgment which consists of eight banker's boxes containing several large binders filled with thousands of pages of documents, transcripts and notes. Plaintiff's memorandum contra contains one reference to the exhibits as a whole, and his supplemental memorandum contains a vague reference to Volume 3 of the exhibits. Plaintiff has not met his burden of designating specific evidence which allegedly would show the existence of a genuine issue of material fact. The court has carefully considered the merits of defendants' motions. The court has reviewed the specific evidence designated by defendants and has found no reason to believe that any of this evidence was inaccurate, misstated or presented out of context.

Defendants have shown that there is no genuine issue as to any material fact and that they are entitled to summary judgment. In accordance with the foregoing, the motions for summary judgment of the Galbreath defendants and the Bricker defendants are hereby granted. The clerk shall enter judgment in favor of these defendants on the claims of plaintiff Russell A. Firestone, III.

It is so ORDERED.