Of course, it may well be that on summary judgment, or on full trial, such facts cannot be supported.  But at the Rule 12(b)(6) stage, we are not free to make such a judgment, and I therefore respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0387P (6th Cir.)
File Name:  01a0387p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TRAVIS RIPPY, by next friend, Aaron and Janet Rippy; AARON RIPPY; and JANET RIPPY,

  *Plaintiffs-Appellees,*

   *v.*

GEORGE HATTAWAY, individually and in his official capacity as Commissioner, Tennessee Department of Children's Services; ANNE MARIE BRYANT, individually and in her official capacity as social counsellor of the Tennessee Department of Children's Services; and SHIRLEY BARTLETT, individually and in his official capacity as field supervisor of the Tennessee Department of Children's Services,

  *Defendants-Appellants.*

No. 99-6277

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00761—Aleta A. Trauger, District Judge.

Argued:  December 5, 2000

Decided and Filed:  November 2, 2001

Before:  BOGGS and GILMAN, Circuit Judges;
BECKWITH, District Judge.

_____

**COUNSEL**

**ARGUED:**    Douglas Earl Dimond, OFFICE OF THE
ATTORNEY GENERAL, CRIMINAL JUSTICE DIVISION,
Nashville, Tennessee, for Appellants.  Kathleen G. Morris,
Nashville, Tennessee, for Appellees.  **ON BRIEF:** Douglas
Earl Dimond, OFFICE OF THE ATTORNEY GENERAL,
CRIMINAL JUSTICE DIVISION, Nashville, Tennessee, for
Appellants.  Kathleen G. Morris, Nashville, Tennessee, for
Appellees.

BECKWITH, D. J., delivered the opinion of the court.
GILMAN, J. (pp. 15-19), delivered a separate concurring
opinion.  BOGGS, J. (pp. 20-24), delivered a separate
dissenting opinion.

_____

**OPINION**

_____

SANDRA S. BECKWITH, District Judge.  On May 23,
1995, the Juvenile Court of Robertson County, Tennessee,
issued an order placing Travis Rippy ("Travis") in the custody

_____

*The Honorable Sandra S. Beckwith, United States District
Judge for the Southern District of Ohio, sitting by designation.

complaint also alleges, which seems more subject to dispute,
that the social workers "had the authority and ability to insist
on the required adjudicatory hearing" and "failed to schedule
the constitutionally required hearings."  However, under Rule
12(b)(6) the issue is not what we believe as to the probable
factual outcome.  Instead, a motion to dismiss under Rule
12(b)(6) should not be granted "unless it appears beyond
doubt that the plaintiff can prove no set of facts in support of
his claims which would entitle him to relief."  *Conley v.
Gibson*, 355 U.S. 41, 45-46 (1957).

Based on the allegations in the complaint, it seems possible
that the parents could prove that the social workers
deliberately acted to prevent the holding of an adjudicatory
hearing, despite well knowing that such a hearing was
constitutionally required.  Further, it is possible that plaintiffs
could prove that the social workers deliberately attempted to
create a plan of care that included false admissions of
misconduct and that this was done "by holding . . . Travis
hostage."  (Amended Complaint, ¶ 19)

Our recent en banc holding in *Holloway v. Brush* clearly
indicates that not every action taken by a social worker that
has some connection to court proceedings is cloaked with
absolute prosecutorial immunity. 220 F.3d 767 (6th Cir.
2000).  At the 12(b)(6) stage, we must take it as possible that
the ultimate facts will show that the defendant social workers
knew that the parents were constitutionally entitled to
absolute or an adjudicatory hearing, and took steps to impede
the holding of such a hearing.  In my opinion, such actions
would not be entitled to absolute or qualified immunity, under
our holding in *Holloway*. *Id.* at 773-80.

As *Egervary* also shows, actions much closer to the
courtroom door than those in our case have been denied
qualified and absolute immunity. *See Egervary*, 2001 U.S.
Dist. LEXIS 13726 at *146 (denying claim that
representations by a federal agent in an ex parte hearing
before a judge are protected by immunity).

I note, as example, that the United States District Court for the Eastern District of Pennsylvania has recently held that attorneys appointed by the State Department, as well as the federal employees who hired and directed them, do not necessarily have either qualified or absolute immunity when they interfere with a father's right to a hearing on custody of his child. *Egervary v. Young*, No. 96-3039, 2001 U.S. Dist. LEXIS 13726 (E.D. Pa. Sept. 6, 2001).

In *Egervary*, the defendants were federal employees in the State Department, and the attorneys appointed by the federal employees. *Id.* at \*22. The attorneys, with support from the federal defendants, obtained an order from a federal district judge ordering the immediate removal of a child from his father in Pennsylvania and his return to Hungary without a hearing. *Id.* at \*26. There was considerable evidence that the federal employees and the attorneys caused the judge in the case to fail to schedule a pre- or post-deprivation hearing. *Ibid.* Judge Thomas O'Neill found that these actions would, if proven, constitute a violation of a clearly established constitutional right, and that *summary judgment* in favor of defendants was inappropriate. *Id.* at \*146.

In order to dispose of this case on a 12(b)(6) motion, an even higher standard *must be met* -- that plaintiffs can prove *no set of facts* that would support a claim. As *Egervary* shows, such a set of facts could be proven. If the defendant social workers did in fact intentionally interfere with and prevent a constitutionally required pre-deprivation hearing, they would be liable. Rule 12(b)(6) disposition of this case is therefore inappropriate.

In this case, the department obtained physical custody of Travis Rippy on February 9, 1996. It is undisputed that, pursuant to Tennessee Rule of Juvenile Procedure 17, when a child has been taken away from his parents, there must be an adjudicatory hearing within thirty days of the date the child is taken into custody. The complaint specifically alleges (what is also reasonable to assume) that Bryant and Bartlett were aware of this rule and its mandatory nature. The

of the Tennessee Department of Children's Services (the "Department") pursuant to a petition filed by Appellant Anne Marie Bryant ("Bryant"). The Juvenile Court awarded custody of Travis to the Department on February 15, 1996 on the basis of a finding that he was a neglected and dependent child. Travis entered the actual custody of the Department on February 9, 1996 and remained in its custody until the Fourth Circuit Court for Davidson County, Tennessee, issued a writ of habeas corpus requiring the Department to return him to his parents, Aaron and Janet Rippy, on August 22, 1997.

The Rippys then filed a civil rights action, pursuant to 42 U.S.C. § 1983, in federal district court. They alleged that Bryant; Shirley Bartlett ("Bartlett"), Bryant's supervisor; and George Hattaway ("Hattaway"), the Commissioner of the Department, had violated the Rippys' right to due process under the United States Constitution. They also asserted various claims under Tennessee law.

The Appellants moved the District Court for the dismissal of the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief could be granted. They argued, *inter alia*, that they were shielded from liability with respect to the Rippys' § 1983 claims on the bases of absolute and qualified immunity. The District Court held that Appellants Bryant and Bartlett were absolutely immune with respect to claims based upon the filing of the petition that resulted in the order initially giving custody of Travis to the Department and for the execution of that order and any "flaws that may have been committed during the execution of that court order." It held that Bryant and Bartlett were not entitled to absolute or qualified immunity with respect to any administrative or investigational acts. The court did not address Appellant Hattaway's claims of immunity.

Appellants appeal the District Court's failure to dismiss the complaint on the bases of absolute and qualified immunity. For the reasons that follow, we **REVERSE** and **REMAND** for the entry of judgment in favor of the Appellants.

I

In considering a motion to dismiss pursuant to Rule 12(b)(6), a federal district court must accept all of the allegations in the complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232 (1974); *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true. *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)(citing *Nishiyama v. Dickson County*, 814 F.2d 277, 279 (6th Cir. 1987)). To survive a motion to dismiss under Rule 12(b)(6), "a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)(citations and internal quotation marks omitted). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hartford Fire Insurance Co. v. California*, 509 U.S. 764, 811 (1993)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). *See also Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1189 (6th Cir. 1996).

When a defendant asserts qualified immunity in the face of a claim under §1983, the plaintiff bears an additional burden of pleading facts that, if taken as true, establish

> not only the violation of his rights, but also that these rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct. *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987).

*Veney v. Hogan*, 70 F.3d 917, 921 (6th Cir. 1995). This court reviews decisions on the legal sufficiency of the allegations in a complaint according to a *de novo* standard. *See RMI*

the Tennessee courts have already found, in violation of the parents' constitutional rights to due process.

Under these circumstances, I would permit the case to go forward, with at least enough discovery so that a court could ascertain whether genuine issues of material fact remain -- an inquiry that is appropriate at the summary judgment stage, but not at the stage of a dismissal under Rule 12(b)(6). I therefore respectfully dissent.

To defeat qualified immunity, a plaintiff must show that the defendant violated clearly established rights of which any reasonable official would be aware.

The facts might be sufficient to defeat qualified immunity, because a reasonable official would know that it violates constitutional rights to prevent for 18 months a hearing that should have happened in 30 days.

On this record, the Rippys might be able to prove that social workers Bryant and Bartlett knew that the parents had a right to an adjudicatory hearing. The Rippys might also be able to prove that Bryant and Bartlett actively (and successfully) sought to prevent such a hearing, by various dilatory and obfuscatory tactics. These may have included preparing draft plans of care that imposed on the parents onerous obligations that they would refuse, such as admitting falsely to being sex offenders. While the court is correct that actually filing in court such a draft plan would be protected by absolute immunity, the administrative action of using such drafts as a tactic to defeat the parents' right to a hearing would not be so protected. Willful failure to prepare a reasonable plan of care may be one of the things that prevented the parents from getting a hearing for over a year and a half.

This would meet the standard for violation of rights.

The central question is therefore whether there exists *any* set of facts that, if proven by the plaintiff, would state a claim against the defendants. The answer is indubitably yes.

———————————

## DISSENT

———————————

BOGGS, Circuit Judge, dissenting. From the pleadings and from the decision of the Tennessee courts in the underlying habeas corpus case, we know that Travis Rippy was unlawfully detained by the Tennessee Department of Human Services, in violation of his and his parents' constitutional rights to due process. Under Tennessee law, an adjudicatory hearing should have been held within thirty days of the time that he was brought into the custody of the department. Instead, he was detained for more than eighteen months, and released only when his parents obtained a writ of habeas corpus. The question that remains is: Whose fault was this state of affairs, and what kind of immunity do any possible perpetrators have?

I agree with the majority that there is no basis for liability for any of the actions undertaken by the courts and the social workers, with one possible exception. I part company from the court on the question of whether there is a possible claim based on the actions of the social workers in detaining Travis for eighteen months without a hearing. It is the state's position, endorsed by the court's opinion, that the social workers either have no liability or have qualified or absolute immunity.

The plaintiffs' claims were dismissed on a Rule 12(b)(6) motion because the district court held that the state officials were either absolutely or qualifiedly immune under any conceivable set of facts arising from this complaint. I disagree, with regard to social workers Bryant and Bartlett. Based on the complaint, plaintiffs could conceivably prove that the social workers deliberately violated the parents' constitutional rights by preventing them from getting a hearing to try to recover the child who had been taken from them. This detention of their child without a hearing was, as

*Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

## II[1]

In her petition for temporary custody of Travis, Appellant Bryant erroneously alleged that Aaron and Janet Rippy had been indicted for the sexual abuse of their older son, Brandon. She further alleged that Aaron and Janet Rippy's parental rights to Brandon had been terminated and that the Rippys had refused to provide the Department with the address where Brandon could be found. Bryant had not observed Travis or conducted any investigation into his condition or risk of harm prior to filing the petition. She alleged that Travis was a neglected and dependent child.

On May 23, 1995, the Juvenile Court awarded temporary protective custody of Travis to the Department without conducting a hearing. The court conducted a hearing on May 25, 1995 in the absence of Aaron and Janet Rippy. The Juvenile Court did not immediately issue an order following that hearing, and Travis remained in the actual custody of his parents until February 9, 1996, when the Department took custody of Travis. On February 15, 1996, without further hearing, the Juvenile Court issued an order of disposition awarding custody of Travis to the Department. The court found that Travis was a neglected and dependent child on the basis of Appellant Bryant's allegations in the initial petition alone.

Between May 1995 and February 1996, no one from the Department observed, interviewed, or examined Travis. Travis resided in Kentucky during that time. Appellants Bryant and Bartlett did not take action to ensure that Travis was represented by a guardian *ad litem* at the May 25, 1995 hearing or that Aaron and Janet Rippy were aware of the right to counsel afforded to them by Tennessee law.

———————————

[1]We accept the allegations in the amended complaint as true for purposes of this appeal.

When Travis entered the actual custody of the Department in February of 1996, he bore no signs of abuse or neglect. In May 1996, social workers documented the absence of any signs of sexual abuse. The Kentucky state agency charged with the protection of children in that state approved the Rippys' home as a safe placement for Travis, but Appellants Bryant and Bartlett refused to return Travis to his parents' custody until ordered to do so in response to Aaron and Janet Rippys' petition for writ of habeas corpus.

Bryant prepared plans of care for Travis pursuant to Tennessee law applicable to neglected and dependent children and unspecified procedures promulgated and enforced by Appellant Hattaway. Appellant Bartlett instructed her to do so. The plans of care included attendance at classes for sexual perpetrators by Aaron and Janet Rippy, in spite of the absence of evidence that Travis had been sexually abused or that his parents had been indicted or convicted of sexual offenses. Participation in those classes would have required Aaron and Janet Rippy to admit to being sexual perpetrators. They refused to attend the classes, and Appellants Bryant and Bartlett refused to return Travis to his parents' custody.

Appellants argue that they are shielded from liability with respect to the Rippys' § 1983 claim by virtue of the doctrine of absolute or judicial immunity. The District Court concluded that Appellants Bryant and Bartlett are absolutely immune from liability for the filing of the custody petition and the execution of the order resulting from that petition. The Rippys do not challenge that conclusion. Appellant Hattaway further argues that he is shielded from liability with respect to the § 1983 claim by virtue of the doctrine of qualified immunity, inasmuch as the Rippys' allegations do not satisfy the pleading requirements identified in *Veney v. Hogan, supra.*

### III

"[S]ocial workers who initiate judicial proceedings against those suspected of child abuse or neglect perform a prosecutorial duty, and so are entitled to absolute immunity."

pleading standard. I therefore concur in the lead opinion's dismissal of the complaint against Hattaway.

banc overrules the prior decision."). I believe that *Crawford-El* has done just that – invalidating the rule created by *Veney*.

The Tenth Circuit, in *Currier*, recently set aside a similar rule of heightened pleading that was fashioned by a prior panel of that court, based on the conclusion that "[t]his court's heightened pleading requirement cannot survive *Crawford-El*." *Currier*, 242 F.3d at 916. That court, like our own, acknowledged that "[a]lthough we are generally bound by the prior precedent of this court, there is an exception to this rule when that precedent is superceded by contrary decisions of the Supreme Court." *Id*. at 912.

The First and Seventh Circuits have also addressed the impact of *Crawford-El* on court-created rules of heightened pleading. Although the First Circuit disagrees with my reading of *Crawford-El*, the Seventh Circuit is in agreement. *See Judge v. City of Lowell*, 160 F.3d 67, 74-75 (1st Cir. 1998) (holding that its heightened pleading requirement for discrimination cases survives *Crawford-El*); *Nance v. Vieregge*, 147 F.3d 589, 590 (7th Cir. 1998) ("Civil rights complaints are not held to a higher standard than complaints in other civil litigation."); *see also Currier*, 242 F.3d at 915-16 (criticizing the analysis and conclusion of the *Judge* case). Accordingly, I would evaluate the Rippys' claim against Hattaway under the notice-pleading standard as outlined in Rule 8 of the Federal Rules of Civil Procedure rather than under the higher standard described by *Veney*.

The Rippys' complaint, however, even under Rule 8's less stringent pleading requirement, still fails to state a claim against Hattaway. We need not, for example, "accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). Indeed, the Rippys' inclusion of Hattaway is at best cursory, and their assertions of unconstitutional acts on his part as Commissioner of the Tennessee Department of Children's Services are just that – legal conclusions lacking any factual support. This is insufficient even under a more liberal

*Achterhof v. Selvaggio*, 886 F.2d 826, 830 (6th Cir. 1989)(citing *Salyer v. Patrick*, 874 F.2d 374 (6th Cir. 1989); *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984)). The District Court concluded that Appellants Bryant and Bartlett are entitled to absolute immunity with respect to the filing of the petition for custody of Travis and the execution of the resulting order. The District Court did not specify which of the alleged acts of the Appellants were encompassed within that conclusion.

The investigation of a social worker that precedes the filing of a complaint or petition is not necessarily a judicial act covered by absolute immunity. *See Achterhof*, 886 F.2d at 830. The Rippys do not allege that Appellants conducted any such investigation, however. Indeed, to the extent that their §1983 claim is based upon the actions of Appellants Bryant and Bartlett prior to the filing of the petition, it is the failure to investigate that is alleged.

The Rippys allege that Bryant filed the petition, which included erroneous accusations concerning conduct of Aaron and Janet Rippy. The implication is that Bryant failed to conduct a careful investigation before incorporating the false accusations in the petition. The District Court concluded, however, that Appellants Bryant and Bartlett are absolutely immune from liability arising from the filing of the petition. *See Achterhof*, 886 F.2d at 830. That immunity extends to unintentional errors in the petition. The Rippys do not allege that Appellant Bryant intentionally misrepresented that Aaron and Janet Rippy had been indicted for a sexual offense.

The District Court also concluded that Appellants Bryant and Bartlett are entitled to absolute immunity with respect to actions undertaken in the execution of the Juvenile Court's order awarding custody of Travis to the Department. That immunity is not defeated by a showing that the order was issued erroneously. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). The Rippys do not challenge that ruling. The actions encompassed in the District Court's conclusion include the seizure of Travis when he was found at his

parents' residence in Kentucky in February 1996. The District Court concluded that the Appellants' other actions were administrative or investigatory in nature and that Appellants are not entitled to absolute immunity with respect to those actions.

In order to determine whether the District Court identified all of the alleged acts of the Appellants with respect to which they are entitled to absolute immunity, the Court must identify all of the actions that underlie the Rippys' §1983 claim. The Rippys allege that Appellant Hattaway promulgated and enforced procedures. They have not identified any specific procedure in their complaint, however. They allege only omissions to act on the part of Appellants Bryant and Bartlett. Specifically, they allege that Bryant and Bartlett failed to observe, interview, or examine Travis between May 1995 and February 1996; failed to ensure that a guardian *ad litem* was appointed to represent Travis at the May 1995 hearing; failed to inform Aaron and Janet Rippy that they were entitled to representation of counsel at that hearing; and failed to effect Travis' return to the custody of his parents between February 1996 and August 1997, in spite of the absence of evidence of a risk of harm.

The case law makes little distinction between prosecutors and social workers who initiate judicial proceedings related to the welfare of a child. *See Salyer*, 874 F.2d at 378. "Immunity rests not on status or title but on the function performed." *Id*. Prosecutors and, by analogy, social workers who initiate proceedings related to the welfare of a child are entitled to absolute immunity while functioning in roles intimately associated with the judicial phase of proceedings. *See Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989).

The appointment of guardians *ad litem* and representation of counsel are matters intimately related to the judicial phase of child custody proceedings. The alleged failures of Appellants Bryant and Bartlett to ensure representation for Travis and to inform Aaron and Janet Rippy of their right to

*Id*. at 600-01.

Although the lead opinion is technically correct that the factual underpinnings of *Crawford-El* involved "claims that require proof of wrongful motive," the Court's discussion and framing of the issue indicate that the role of appellate courts in rulemaking was generally at issue rather than simply the specific challenge to the D.C. Circuit's decision. This conclusion is supported by the Court's own formulation of the question presented in *Crawford-El*:

> The broad question presented is whether the courts of appeals may craft special procedural rules for such cases to protect public servants from the burdens of trial and discovery that may impair the performance of their official duties. The more specific question is whether, at least in cases brought by prisoners, the plaintiff must adduce clear and convincing evidence of improper motive in order to defeat a motion for summary judgment.

*Id*. at 577-78; *see also Currier v. Doran*, 242 F.3d 905, 916 (10th Cir. 2001) ("[T]he manner in which the Court framed the 'broad' question presented for appeal . . . suggests that the Court's ruling is not limited to the D.C. Circuit's heightened burden of proof.").

Because *Veney*, like the rejected rule in *Crawford-El*, was not derived from the Federal Rules of Civil Procedure, nor was its creation by this court permitted by any other grant of authority, I believe that *Crawford-El* invalidated this Sixth Circuit-created rule of heightened pleading. Although one panel of this court is generally prohibited from overruling the holding found in the published opinion of a prior panel, it may do so when an intervening decision of the Supreme Court invalidates the previous decision. *See Salmi v. Sec'y of Health and Human Servs*., 774 F.2d 685, 689 (6th Cir. 1985) ("The prior decision remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en

stray far from the traditional limits on judicial authority." *Id*. at 594. Although the Court describes its qualified immunity jurisprudence as an exception to this rule of restraint, it goes on to express its reluctance to allow qualified immunity itself to support a wide array of court-created procedural rules. The Court in fact pointed out that the defense of qualified immunity "did not implicate the elements of the plaintiff's initial burden of proving a constitutional violation." *Id*. at 588. In reflecting on its history of restraint, the Court stated that "[i]n the past, we have consistently declined similar invitations to revise established rules that are separate from the qualified immunity defense. We refused to change the Federal Rules governing pleading by requiring the plaintiff to anticipate the immunity defense. . . ." *Id*. at 595.

Crucial to the Court's discussion of judicial restraint in rulemaking was its belief that the Federal Rules of Civil Procedure currently provide a variety of tools that a district court can use to effectively weed out unmeritorious claims, but that do not also unduly restrict a district court from exercising its discretion given the peculiarities and uniqueness of each case. *Id*. at 598-601. For example, a district court "may order a reply to the defendant's or a third party's answer under Federal Rule of Civil Procedure 7(a), or grant the defendant's motion for a more definite statement under Rule 12(e)." *Id*. at 598. These and many other rules, rather than a blanket commandment such as that imposed by *Veney*, are more effective tools "to protect public officials from undue harassment." *Id*. at 600. The Court concluded its discussion by stating:

> It is the district judges rather than appellate judges like ourselves who have had the most experience in managing cases in which an official's intent is an element. Given the wide variety of civil rights and "constitutional tort" claims that trial judges confront, broad discretion in the management of the fact-finding process may be more useful and equitable to all the parties than the categorical rule imposed by the Court of Appeals.

representation were, therefore, part of their quasi-judicial function and not distinct administrative or investigatory acts. For that reason, Appellants Bryant and Bartlett are entitled to absolute immunity for their alleged failures to ensure guardian *ad litem* representation for Travis and to inform Aaron and Janet Rippy of their right to counsel in the same manner that the juvenile court judge would be entitled to absolute immunity for the same omissions. *See Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000)(*en banc*).

The Rippys allege that Appellants Bryant and Bartlett violated Travis' right to due process and the Rippys' right to privacy by failing to observe, interview, or examine Travis between May 1995 and February 1996. They allege that Appellants Bryant and Bartlett violated the same rights by failing to effect Travis' return to his parents' custody between February 1996 and August 1997 in spite of the absence of evidence of a risk of harm. The implication of their allegations is that Appellants Bryant and Bartlett could have brought about Travis' return had they performed an adequate investigation at any time after the Juvenile Court ordered Travis' removal from his parents' custody in May 1995.

Tennessee law entrusts the decision whether to return a neglected child to the home from which he was removed to the Juvenile Court. *See* Tenn. Code Ann. §37-1-130(e)(1). The Department acts in an advisory role to the Juvenile Court in recommending that the child is ready to return home. *See id*. In performing that role, social workers in the Department act in much the same fashion as probation officers who make sentencing recommendations to criminal courts for which they are entitled to absolute immunity. *See Hili v. Sciarotta*, 140 F.3d 210, 213 (2d Cir. 1998); *Tripati v. INS*, 784 F.2d 345, 348 (10th Cir. 1986), *cert. denied*, 484 U.S. 1028 (1988); *Maynard v. Havenstrite*, 727 F.2d 439, 441 (5th Cir. 1984). The function of making such recommendations, including the underlying investigation, is similarly intimately related to the judicial phase of the child custody proceedings. Social workers involved in the investigation or recommendation are, therefore, entitled to absolute immunity with respect to claims

arising from such recommendations and investigations. Appellants Bryant and Bartlett are immune from liability for their alleged failure to investigate and effect Travis' return to his parents' custody after the Juvenile Court ordered his removal in May 1995.[2]

The Rippys also contend that Appellants Bryant and Bartlett's formulation of and attempt to implement a plan of care that required Aaron and Janet Rippy to admit to being sexual perpetrators is an administrative act and that Bryant and Bartlett are not entitled to absolute immunity with respect to those actions. Under Tennessee law, the Juvenile Court, and not the Department, is responsible for adopting a plan for permanent placement of a child, including a plan that places the child with his parents. *See* Tenn. Code Ann. §37-2-403(a)(2)(A). The Department "determine[s] the required elements or contents of the permanency plan." *See id.* Those elements include, in cases involving child abuse or neglect, appropriate rehabilitative assistance for the abusing or neglecting parent. *See* Tenn. Code Ann. §37-2-403(a)(5). Accordingly, under Tennessee law, the Department functions as an arm of the Juvenile Court for purposes of determining the required elements of the plan. The juvenile court adopts the plan devised by the Department.

---

[2]Relying, at least in part, on the recent decision in *Egevary v. Young*, No. 96-3039, 2001 U.S. Dist. LEXIS 13726 (E.D. Pa. Sept. 6, 2001), the dissent suggests that "the parents could prove that the social workers deliberately acted to prevent the holding of an adjudicatory hearing" and thereby overcome absolute immunity. The Rippys do not allege, however, that the social workers deliberately caused the Juvenile Court to fail to schedule a hearing or prevented the scheduling of a hearing, which the parents also had the "authority and ability" to request. The District Court's analysis, at the 12(b)(6) stage, is confined to the facts alleged. Having failed to allege that the social workers deliberately interfered with or prevented the scheduling of an adjudicatory hearing by the Juvenile Court, the Rippys do not state a claim upon which relief could be granted in light of the absolute immunity afforded by law to the social workers.

---

## CONCURRENCE

---

RONALD LEE GILMAN, Circuit Judge, concurring. I fully concur with the lead opinion's analysis regarding the absolute immunity of Bartlett and Bryant, and agree that Hattaway is entitled to qualified immunity. But because I believe that the Supreme Court's opinion in *Crawford-El v. Britton*, 523 U.S. 574 (1998), overrules the heightened pleading standard that this court created in *Veney v. Hogan*, 70 F.3d 917 (1995), I write separately to address footnote 3 of the lead opinion.

In *Veney*, this court imposed a heightened pleading standard upon plaintiffs suing a public official when the official asserts the defense of qualified immunity. *Veney*, 70 F.3d at 921. The lead opinion concludes that the Rippys did not satisfy this burden with respect to their claim against Hattaway. Although I agree that the Rippys have failed to state a claim against Hattaway, I do not believe that the pleading standard outlined in *Veney* is the correct rule to apply now that the Supreme Court has expressed its disagreement with court-fashioned pleading requirements not contained in the Federal Rules of Civil Procedure. *See Crawford-El*, 523 U.S. at 600-01 (expressing a preference for allowing district judges to have broad discretion over the management of the lawsuit, as permitted by the Federal Rules of Civil Procedure, rather than "categorical rule[s] imposed by the Court of Appeals.").

In *Crawford-El*, the Supreme Court rejected the D.C. Court of Appeals's rule requiring a plaintiff alleging unconstitutional motivation to prove such intent by clear and convincing evidence. The rationale used to strike down this heightened burden of proof calls into question all such court-fashioned rules. For example, the Supreme Court cautioned that the sua sponte creation of procedural rules, without precedential support or authorization by the Federal Rules of Civil Procedure or any other statutory grant of power, "would

clearly established in May 1995.[4]   Accordingly, their allegations are insufficient to overcome the qualified immunity defense asserted by Appellant Hattaway. He is, therefore, entitled to the dismissal of the Rippys' § 1983 claim against him.

V

For all of the reasons set forth above, the decision of the District Court denying, in part, the Appellants' motion to dismiss is **REVERSED**.   This matter is **REMANDED** with instructions to enter judgment in favor of Appellants with respect to the Rippys' claim under § 1983.

---

[4]The right to representation by counsel in a proceeding affecting custody of one's child was a clearly established requirement of procedural due process in 1995.  *See Doe v. Staples*, 706 F.2d 985, 990 (6th Cir. 1983), *cert. denied*, 465 U.S. 1033 (1984).  The right to be informed of the right to representation by a social worker, who performs a role like that of a prosecutor in that proceeding, was not clearly established at that time, however.  The distinction is that Aaron and Janet Rippy do not allege that Appellant Bryant deprived them of their right to counsel, but that she failed to inform them of that right.  A reasonable official in Appellant Bryant's position in May 1995 would not have clearly understood that she bore an affirmative duty to inform Aaron and Janet Rippy of their right to representation by counsel at the May 25, 1995 hearing. *See Dominique*, 831 F.2d at 676.  Likewise, a reasonable official in Appellant Hattaway's position would not have clearly understood that he bore an affirmative duty to promulgate procedures pursuant to which officials of the Department would inform parents of their right to counsel.

As the party charged by Tennessee law with responsibility for devising the plan that is adopted by the Juvenile Court for the permanent placement of an abused or neglected child, the Department and its officials perform a quasi-judicial role in devising such a plan.  The function of devising the plan for court-approval is intimately related to the judicial phase of the child custody proceedings.  Social workers involved in devising the plan for permanent placement are, therefore, entitled to absolute immunity with respect to actions undertaken in devising the plan.  That immunity protects Appellants Bryant and Bartlett from liability arising from the inclusion in the permanent placement plan for Travis of a requirement that Aaron and Janet Rippy attend classes for sexual perpetrators.

All of the alleged acts of Appellants Bryant and Bartlett are covered by absolute immunity.  They are, therefore, entitled to the dismissal of the Rippys' claims against them on that basis.  The only alleged act of any of the Appellants that is not covered by absolute immunity is Appellants Hattaway's promulgation and enforcement of policies. The promulgation and enforcement of policies is not related to the judicial phase of child custody proceedings.  Appellant Hattaway is not, therefore, entitled to absolute immunity with respect to the Rippys' §1983 claim to the extent that it is based upon that alleged act.

IV

Government officials performing discretionary functions "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A constitutional right must be clearly established in a particularized sense. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. The fact that a

plaintiff has asserted the violation of a broadly stated general right is not determinative:

> [O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must have been sufficiently clear that a reasonable official would understand that what he is doing violates the right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 640. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

When a qualified immunity challenge to the complaint is asserted,

> the plaintiff is entitled to the opportunity to come forward with additional facts or allegations that show not only the violation of his rights, but also that these rights were so clearly established when the acts were committed that any official in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to refrain from the conduct. *Dominique v. Telb*, 831 F.2d 673, 676 (6th Cir. 1987). If this pleading burden is not carried by Plaintiff in either the original complaint or by a pleading in response to defendant's assertion of the qualified immunity defense, dismissal is proper. *Cameron v. Seitz*, 38 F.3d 264, 273 n.2 (6th Cir. 1994).

*Veney*, 70 F.3d at 921.[3]

---

[3]The Supreme Court's decision in *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998), did not alter the requirements identified in *Veney v. Hogan*. The *Crawford-El* court limited its discussion of the

When a defendant asserts the qualified immunity defense in the context of a motion to dismiss, the plaintiff cannot rely upon mere "notice pleading." Rather, if the allegations in the complaint do not adequately set forth the circumstances in support of the plaintiff's claims, the plaintiff must amend her complaint to include specific and non-conclusory allegations of fact that will enable the court to determine whether those facts, if proven true, will overcome the qualified immunity defense. *See id*. at 922.

In their amended complaint, the Rippys make only one allegation of specific conduct by Appellant Hattaway in violation of rights guaranteed by the Constitution. They allege that he promulgated and enforced procedures pursuant to which Appellant Bryant removed Travis from his parents' custody, failed to inform Aaron and Janet Rippy of their right to counsel, and prepared a plan for Travis' permanent placement. While the promulgation and enforcement of procedures is a conceivable basis for a claim under § 1983, a plaintiff overcomes a qualified immunity defense only by identifying a particularized, clearly established right that is violated by the promulgation and enforcement of specified procedures. *See Anderson*, 483 U.S. at 640.

The only specific procedure the Rippys identify in their amended complaint is that pursuant to which Appellant Bryant failed to inform Aaron and Janet Rippy of their right to counsel. Appellees cannot, however, establish that a right of parents to be informed by a governmental agency involved in child custody proceedings of their right to counsel was

---

qualified immunity defense to claims that require proof of wrongful motive. *See id*. at 597. The Court declined to heighten the pleading requirement on plaintiffs by changing the qualified immunity standard or otherwise with regard to such claims. *See Hoard v. Sizemore*, 198 F.3d 205, 218-19 (6th Cir. 1999).