GENERAL MEDICINE, P.C., Plaintiff,

v.

MORNING VIEW CARE CENTERS, Defendant.

No. 2:05–CV–439.

United States District Court, S.D. Ohio, Eastern Division.

Nov. 15, 2006.

Rex H. Elliott, Charles Horne Cooper, Jr., Karen D. Weis, Cooper & Elliott LLC, Columbus, OH, for Plaintiff.

Geoffrey Everett Webster, Eric B. Hershberger, Geoffrey Webster, Attorney at Law, Columbus, OH, for Defendant.

## OPINION AND ORDER

FROST, District Judge.

This matter comes before the Court for consideration of a Motion to Dismiss (Doc. # 36) filed by Defendant, Morning View Care Centers ("Morning View"), a Memorandum in Opposition (Doc. # 37) filed by Plaintiff, General Medicine PC ("General Medicine"), and a Reply Memorandum. (Doc. # 38). For the reasons that follow, this Court **GRANTS** Defendant's Motion to Dismiss. (Doc. # 36.)

### I. Facts

General Medicine provides professional medical care to residents of nursing home facilities in the state of Ohio. Morning View is a licensed operator of nursing home facilities in Ohio. On or about May 1, 1999, General Medicine and Morning View entered separate but identical written contracts each titled "Facility Medical Man-

agement Agreement" ("Agreement") for each of the residential health care facilities owned and operated by Morning View. The Agreement had four relevant provisions. First, it appointed General Medicine as the exclusive Medical Director for that facility under which General Medicine agreed to the following: (1) to appoint a physician to serve as Medical Director for each facility; (2) to establish and manage a staff of physicians and nurses for each facility; (3) provide 24–hour a day, 7–day a week staff and medical coverage; (4) to implement a system of bylaws for the granting of privileges to treat patients in the facility; and finally (5) to assume the responsibility for the quality and consistency of medical care in the facility. Second, Morning View was required to pay General Medicine a fixed monthly fee for its services as Medical Director. The fee varied depending on the location of the facility. Third, each Agreement contained as an addendum an exclusivity provision, which prohibited General Medicine from working, negotiating or discussing its services with other designated care facilities. Finally, the Agreement required General Medicine to impose a credentialing requirement for any physician who wished to join the medical staff and treat patients in the facilities.

The initial term of each Agreement was one year after which the Agreement would automatically renew for an indefinite number of successive three-year terms. All of the Agreements became effective on May 1, 1999 and renewed automatically on May 1, 2000 for a three year term. In the middle of the first three year term, Morning View announced that it was cancelling all of the Agreements. General Medicine alleges that Morning View evicted General Medicine's staff from the facilities, ceased making monthly payments to the Directors, and then began contacting General Medicine's patients in order to persuade them to transfer their medical care to the new Medical Director, who was a Morning View employee.

Consequently, on April 7, 2003, General Medicine filed a complaint, which was dismissed and then refiled on April 17, 2003 in the Tuscarawas County Common Pleas Court ("State Complaint") based on the alleged breaches of the parties' agreement. (Doc. # 36.) Specifically, General Medicine claimed that the following conduct of Morning View was evidence that Morning View breached the Agreement at the New Philadelphia for the following reasons:

1.  Morning View waived the credentialing requirement and thereby permitted non-credentialed physicians to treat patients;

2.  Morning View failed to pay the Medical Director's fees;

3.  Morning View violated the exclusivity provision that allowed only General Medicine to provide all professional medical services;

4.  Morning View failed to send a letter notifying patient-chosen physicians that they are not credentialed in accordance with General Medicine's process and they do not have staff privileges at the facility;

5.  Morning View failed to send notice to the patients as to how physicians of their choice may become credentialed;

6.  Morning View sent a letter to residents suggesting that they choose from a list of doctors as a replacement for General Medicine's doctor where those doctors were not credentialed and did not meet the requirements under the Agreement;

7.  Morning View represented that it would continue the agreement with General Medicine when, in fact, it had no intention of fulfilling its obligations under the Agreement;

8. Morning View wrongfully terminated the Agreement and advised General Medicine that it would be replaced as Medical Director.

*Id.*

The state court action was then tried to a jury of eight. General Medicine presented evidence, as listed above, in support of its claim for breach of contract. Subsequently, Morning View presented its defense to the claim of breach of contract. The jury was instructed relative to the applicable law pertaining to the claim for breach of contract. The jury returned a verdict in favor of Morning View finding that Morning View's conduct did not amount to a breach of the Agreement between the parties. The jury also returned a verdict in favor of General Medicine with respect to Morning View's counterclaim.

On May 5, 2005, the same Plaintiff, General Medicine, then filed the complaint now under consideration (Federal Complaint) (Doc. #1) against the same Defendant, Morning View, alleging that Defendant breached the Agreement at six other facilities. Specifically, Plaintiff argues that its complaint arises out of Defendant's wrongful termination of the contract, failure to pay monthly Medical Director payments, and finally evicting Plaintiff's Medical Director staff from the facilities in order to persuade the patients to transfer their medical care to a physician that was not associated with the Plaintiff. The Agreement entered into each of these six facilities is identical in terms to the New Philadelphia Agreement but for the dates and locations. In addition to a breach of contract claim, Plaintiff now also alleges a claim that Defendant engaged in tortious interference with business and contractual relations when it interfered with Plaintiff's business and/or contractual relationship with the patients whom it treated at Morning View facilities by preventing Plaintiff from seeing those patients in the facilities and then transferring the care of those patients over to its own employee-doctors. Plaintiff now seeks compensatory damages, punitive damages, and reasonable attorney fees and costs.

## II. Standard of Review

Defendant moves for dismissal of Plaintiff's Complaint under Fed.R.Civ.P. 12(b)(6). Dismissal is warranted under this rule "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir.2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Therefore, the focus is not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Rippy ex rel. Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir.2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir.2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998)). A court need not, however, accept conclusions of law or unwarranted inferences of fact. *Perry v. American Tobacco Co., Inc.,* 324 F.3d 845, 848 (6th Cir.2003).

## III. Discussion

Plaintiff argues that collateral estoppel does not preclude its claims in the present case. Plaintiff alleges that the complaint in this case does not set forth any single issue or fact that was litigated in the state court action. Conversely, Defendant

moves to dismiss Plaintiff's complaint on ground that Plaintiff's claims are barred by collateral estoppel. For the reasons that follow, this Court finds that the doctrine of res judicata bars Plaintiff's breach of contract claim on the basis of both claim preclusion and issue preclusion, otherwise known as collateral estoppel. This Court also finds that Plaintiff's tortious interference with business and contractual relations claim is barred solely by claim preclusion.

■■■ The doctrine of res judicata involves both claim preclusion and collateral estoppel. Generally, under Ohio law, claim preclusion applies when (1) the judgment of a prior case is valid, final and was decided on the merits; (2) the judgment in the prior case was issued by a court of competent jurisdiction; (3) both the prior and the present suit involve the same parties or those whose interests are adequately close to demonstrate a relationship of privity; and (4) both the prior and present case arose from the same transaction or occurrence.[1] See, e.g., Firestone v. Galbreath, 895 F.Supp. 917, 922 (S.D.Ohio 1995); Koehler v. Ohio Civil Rights Comm., No.2005–T–0149, 2006 WL 2796492, *4 (Ohio App. 11 Dist. Sept. 29, 2006). Thus, claim preclusion covers two scenarios. First, if a party brings a claim on a certain set of facts and elects to hide facts that are ripe in support of its claim, the party is barred from relitigating that same claim based on the facts that it choose not to disclose. See, e.g., Firestone, 895 F.Supp. at 922 (S.D.Ohio 1995); Koehler, 2006 WL 2796492, at *4. Second, if a party could have brought another claim based on the same transaction or occurrence and then chose not to bring that claim, if those facts are then fully and

fairly litigated to render judgment, that party is also forever barred from bringing another claim based on that same transaction or occurrence. See Grava v. Parkman Township, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995) (holding that a "valid final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was subject matter of the previous action").

■■ In order to establish the defense of collateral estoppel under Ohio law, a party must prove that "(1) the party whom estoppel is sought was a party or in privity with a party in the prior action; (2) there was a final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue; (3) the issue must have been tried and decided and must be necessary to the final judgment; and (4) the issue must be identical to the issue involved in the prior suit." Firestone, 895 F.Supp. at 922 (S.D.Ohio 1995). In order to determine whether the issues involved are identical the test is whether the same facts or evidence would sustain both. Id.

### Count One: Breach of Contract

■ Plaintiff argues that its breach of contract claim in the Federal Complaint is distinct from the State Complaint. (Doc. # 1; Doc. # 36.) Plaintiff states that the Federal Complaint is based upon the six allegedly different Agreements that the parties entered into at other facilities while the State Complaint was limited solely to the Agreement and the disputes that arose only at the New Philadelphia Facility. Id. This Court finds that the New Philadelphia Agreement and the six Agreements entered into at the each of the six facilities

1. See McKinley v. City of Mansfield, 404 F.3d 418 (6th Cir.2005) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)) (instructing federal courts to apply the collateral estoppel law of the state which issued the prior judgment).

in the Federal Complaint are entirely identical but for the dates and locations. *Id.*

Moreover, there is a complete overlap between the evidence that Plaintiff advances to allege a breach of contract in the Federal Complaint and the allegations that Plaintiff advanced in the State Complaint. Specifically, in the Federal Complaint, Plaintiff alleges a breach of contract because (1) Defendant failed to pay monthly Medical Director payments; (2) Defendant failed to comply with the termination procedures set forth in the agreement; and (3) Defendant evicted Plaintiff from the facilities. This Court emphasizes that according to Plaintiff's allegations, when Plaintiff brought its State Complaint in April of 2003, Defendant had already cancelled all of the agreements and evicted Plaintiff's Medical Director from all of its facilities, including New Philadelphia. (Doc. # 36 ¶ 38.) In the jury trial, Plaintiff had the opportunity to offer all of the facts that it believed amounted to a breach of contract, including the fact that its Medical Director had been evicted from the New Philadelphia facility. However, in its State Complaint, Plaintiff artfully mentioned that Defendant had told Plaintiff that the Medical Director was evicted from the facilities (Doc. # 36 ¶ 38) and then failed to mention the eviction of the Medical Director as one of its proffered reasons why Defendant had breach the contract. *Id.* ¶ 41. Thus, at the time that Plaintiff filed its State Complaint, an eviction of a member of Plaintiff's staff at the New Philadelphia facility had occurred, and Plaintiff chose not to allege that fact as part of its claim. (Doc. # 36 ¶¶ 38, 41.) In effect, Plaintiff is asking this Court to reward its decision to engage in piecemeal litigation when it chose to advance most, but not all of the available evidence that it believed amounted to a breach in its state court claim. (Doc. # 1.)

As mentioned earlier, one scenario covered by claim preclusion is when a party brings a claim based on a certain set of facts and selects to hide facts that are ripe in support of its claim, that party is then barred from relitigating that same claim based on the facts that it chose not to disclose. Thus, claim preclusion bars Plaintiff's breach of contract claim in the Federal Complaint based on the eviction of Plaintiff from Defendant's facilities.

■ As for Plaintiff's allegations in the Federal Complaint that there was a breach of contract because of Defendant's failure to (1) pay monthly Medical Director payments, and (2) comply with the termination procedures set forth in the agreement, those issues were fully and fairly litigated in the prior case. The jury decided that the all of the facts presented by the Plaintiff, including the failure to pay and failure to comply, did not amount to a breach of contract. Therefore, Plaintiff is collaterally estopped from relitigating these remaining issues that it now offers to allege that Defendant breached each of six Agreements in the present case.

### Count Two: Tortious Interference with Business and Contractual Relations

Only in the Federal Complaint does Plaintiff bring a claim against Defendant for tortious interference with business and contractual relations that it had with the patients treated in the Morning View Facilities. (Doc. # 1.) Specifically, Plaintiff alleges that "Morning View tortiously, intentionally, and without privileges interfered with those relationships by barring General Medicine physicians from seeing patients in the facilities and switching the care of those patients over to its own employee-doctors." *Id.*

■ This Court again emphasizes that according to Plaintiff's allegations, when

Plaintiff brought its State Complaint in April of 2003, Defendant had already terminated all of the Agreements and evicted Plaintiff's Medical Director from all of its facilities, including New Philadelphia. (Doc. # 36 ¶ 38.) Thus, at the time that Plaintiff brought the State Complaint, Plaintiff could have brought its tortious interference with business and contractual relations claim based on the same transaction or occurrence, but chose not to advance that claim in its State Complaint. As a result, those facts were then fully and fairly litigated at the jury trial on Plaintiff's breach of contract claim, and that court entered judgment after the jury found that Defendant did not breach the Agreement between the parties. Thus, claim preclusion now bars Plaintiff from bringing its Tortious Interference Claim in the present case based on the same set of facts that have been previously litigated.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss. (Doc. # 36). The clerk shall enter judgment accordingly and terminate this case upon the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**